# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## BOSTON, MASSACHUSETTS

| | |
|---|---|
| SHIVA AYYADURAI, an individual, ) | CASE NO. |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | |
| FLOOR64, INC., a California corporation ) | |
| d/b/a TECHDIRT; MICHAEL DAVID ) | *DEMAND FOR JURY TRIAL* |
| MASNICK, an individual; LEIGH ) | |
| BEADON, an individual; and DOES 1-20, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Plaintiff Dr. Shiva Ayyadurai ("Dr. Ayyadurai" or "Plaintiff"), by and through his

undersigned attorneys, sues Defendants Floor64, Inc. d/b/a Techdirt, Michael David Masnick,

Leigh Beadon, and DOES 1-20 (collectively, "Defendants"), and respectfully makes the

following allegations.

## SUMMARY OF THE CASE

1.      Dr. Ayyadurai is a world-renowned scientist, inventor, lecturer, philanthropist and

entrepreneur.  In 1978, Dr. Ayyadurai invented email:  the electronic mail system as we know it

today.  On November 15, 2011, *TIME* magazine published an article titled "The Man Who

Invented Email," which outlines the backstory of email and Dr. Ayyadurai's invention.  In June

2012, *Wired* magazine reported: "Email … the electronic version of the interoffice, inter-

organizational mail system, the email we all experience today, was invented in 1978 by [Dr.

Ayyadurai] … The facts are indisputable."  In July 2015, CBS reported on *The Henry Ford Innovation Nation,* hosted by Mo Rocca:  "Next time your fingers hit the keyboard to write a quick email, you might want to say, thank you to Shiva Ayyadurai…. he is credited with inventing email …. in the late 1970s."  Several other testimonials from prominent experts in the technology industry are set forth in paragraphs 22 through 33 below.

2.      Dr. Ayyadurai holds four degrees from the Massachusetts Institute of Technology (MIT): a B.S. in Electrical Engineering and Computer Science, an M.S. in Visual Studies, an M.S. in Mechanical Engineering, and a Ph.D. in Biological Engineering.  Dr. Ayyadurai has been recognized internationally for his developments in early social media portals, email management technologies, and contributions to medicine and biology.  He has been a speaker at numerous international forums, where he has discussed email, science, medicine and technology, among other topics.  Dr. Ayyadurai operates his own research and education center: the International Center for Integrative Systems in Cambridge, Massachusetts, and also serves as Chairman & CEO of CytoSolve, Inc.

3.      Since at least 2014, Defendants have engaged in an ongoing campaign to damage Dr. Ayyadurai's personal and professional reputation and career by publishing no less than fourteen (14) false and highly defamatory articles about Dr. Ayyadurai on their website at www.techdirt.com (collectively, the "Techdirt Articles").  The Techdirt Articles falsely state, among other things, that Dr. Ayyadurai is a "fraud," "liar" and a "fake."

4.      Defendants' false and defamatory statements have caused substantial damage to Dr. Ayyadurai's personal and professional reputation and career.  As a result of Defendants' defamation, Dr. Ayyadurai has been publicly humiliated, lost business contracts and received a

slew of scorn, ridicule and criticism relating to Defendants' false accusations and statements. Defendants' wrongful acts, which have been repeated, have left Dr. Ayyadurai with no alternative but to file this lawsuit. Dr. Ayyadurai seeks an award of no less than Fifteen Million Dollars ($15,000,000) in compensatory damages, plus an additional amount in punitive damages.

## THE PARTIES

5.      Plaintiff is a resident and domiciliary of the Commonwealth of Massachusetts, County of Middlesex.

6.      Upon information and belief, Defendant Floor64, Inc. d/b/a Techdirt ("Techdirt") is a California corporation with its principal place of business located in Redwood City, California.

7.      Upon information and belief, Defendant Michael David Masnick ("Masnick") is an individual, domiciled in the San Carlos, California. At all relevant times, Masnick was an editor, Founder and CEO of Techdirt.

8.      Upon information and belief, Defendant Leigh Beadon ("Beadon") is an individual, domiciled in Toronto, Canada. At all relevant times, Beadon was a writer at Techdirt.

9.      Upon information and belief, Defendants, and each of them, were and are the agents, licensees, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining Defendants and each of them are, and at all times mentioned herein were, acting within the course and scope of that agency, license, partnership, employment, conspiracy, ownership, or joint venture. Upon further information and belief, the acts and conduct herein alleged of each of the Defendants were known to, authorized by, and/or ratified by the other Defendants, and each of them.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Defendants because they have minimum contacts with the Commonwealth of Massachusetts.

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of the parties to this action and the amount in controversy exceeds $75,000.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred here.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

### DR. SHIVA AYYADURAI'S INVENTION OF EMAIL

13. In or about 1978, while working as a Research Fellow at the University of Medicine and Dentistry of New Jersey, Dr. Ayyadurai created email: a computer program that created an electronic version of a paper-based interoffice mail system, which allowed mail to be sent electronically and consisted of the Inbox, Outbox, Drafts, Folders, Memo, Attachments, Carbon Copies, Blind Carbon Copies) (*i.e.,* "To:," "From:," "Date:," "Subject:," "Body:," "Cc:," "Bcc:"), Return Receipt, Address Book, Groups, Forward, Compose, Edit, Reply, Delete, Archive, Sort, Bulk Distribution, etc. These features are now a familiar part of modern email systems.

14. Dr. Ayyadurai invented email to manage the complexity of interoffice communications, and also to reduce the use of paper documents. Dr. Ayyadurai designed email to be accessible to ordinary people with little or no computer experience, at a time when computers were mainly used by highly-trained technical people.

15.     Dr. Ayyadurai wrote nearly 50,000 lines of computer code to implement the features of email.

16.     Dr. Ayyadurai named his computer program "email".  He was the first person to create this term, because he was inventing the "electronic" (or "e") version of the interoffice paper-based "mail" system.  His naming of "email" also arose out of the limited parameters of the programming language and operating system, which limited program names to all capital letters and a five-character limit: thus, his selection of the letters "E" "M" "A" "I" "L."

17.     At the time of Dr. Ayyadurai's invention of email, software inventions could not be protected through software patents.  It was not until 1994 that the United States Court of Appeals for the Federal Circuit ruled that computer programs were patentable as the equivalent of a "digital machine."  However, the Computer Software Act of 1980 allowed software inventions to be protected to a certain extent, by copyright.  Therefore, in or about 1981, Dr. Ayyadurai registered his invention with the U.S. Copyright Office.  On August 30, 1982, Dr. Ayyadurai was legally recognized by the United States government as the inventor of email through the issuance of the first U.S. Copyright registration for "Email," "Computer Program for Electronic Mail System," a true and correct copy of which is attached hereto as **Exhibit A**.  With that U.S. Copyright of the system, the word "email" entered the English language.[1]

18.     In summary, Dr. Ayyadurai was the first to convert the paper-based interoffice mail system (inbox, outbox, folders, attachments, etc.) to its electronic version; the first to call it "email;" and received the first U.S. Copyright for email that legally recognized Dr. Ayyadurai as the inventor of email, and caused the word "email" to enter the English language.  These facts

---

[1] The Online Etymology Dictionary lists "email" as entering the language in 1982, when Dr. Ayyadurai's Copyright was registered. http://www.etymonline.com/index.php?term=e-mail

are verified by several academic papers on the history of email, including, *What is Email? And, Who Invented It?* By Leslie P. Michelson, Ph.D. (a true and correct copy of relevant excerpts are attached hereto as **Exhibit B**), *Invention of Email in Newark, NJ (1978): The First Email System* by Leslie P. Michelson, Ph.D., Robert Field, Deborah J. Nightingale, Sen Song, Ph.D., M. Feuerman, and Richard Corson, M.D. (a true and correct copy of relevant excerpts are attached hereto as **Exhibit C**), and *Origin of Email & Misuses of the Term "Email"* by Deborah J. Nightingale, Sen Song, Ph.D., Leslie P. Michelson, PhD., and Robert Field (a true and correct copy of relevant excerpts are attached hereto as **Exhibit D**).

19.     On or about November 15, 2011, *TIME* magazine published an article titled "The Man Who Invented Email," a true and correct copy of which is attached hereto as **Exhibit E**, which outlines the history of email and Dr. Ayyadurai's invention.  The article states that "email—as we currently know it—was born" when Dr. Ayyadurai created it, replicating an interoffice mail system at the University of Medicine and Dentistry in Newark, New Jersey.  The article states that "the original system was set up for doctors to communicate electronically using the [physical] template they were already used to" and the interface "hasn't changed all that much" in becoming the email system we know and use today.  The *TIME* article also states that in "1981, Shiva [Ayyadurai] took honors at the Westinghouse Science Awards for his 'High Reliability, Network-Wide, Electronic Mail System'" and in 1993 he "won a White House competition for developing a system to automatically analyze and sort email messages."

20.     In June 2012, *Wired* magazine reported that: "Email … the electronic version of the interoffice, inter-organizational mail system, the email we all experience today … was invented in 1978 by [Dr. Shiva Ayyadurai] … The facts are indisputable."  A true and correct

copy of the June 2012 *Wired* magazine article is attached hereto as **Exhibit F**.

21.     In July 2015, CBS reported on *The Henry Ford Innovation Nation,* hosted by Mo Rocca:  "Next time your fingers hit the keyboard to write a quick email, you might want to say, thank you to Shiva Ayyadurai.... he is credited with inventing email…. in the late 1970s."

22.     Leslie P. Michelson, Ph.D., Director of the High Performance Computing Center at Rutgers University, has stated: "The facts are black and white on this.  There is no gray area.  The ARPANET didn't invent email.  Ray Tomlinson didn't invent email.  And, neither did the so-called 'internet pioneers' of the 1960s and 1970s.  Dr. Shiva Ayyadurai's journey reveals a larger truth that should be evident by now:  innovation can happen anywhere, anytime, by anyone."

23.     Stephen Y. Chow, a prominent intellectual property attorney and partner of Burns and Levinson, LLP, Elected Member of the American Law Institute, Commissioner of the Massachusetts Uniform Law Commission, and Adjunct Professor at Suffolk University Law School, has stated: "In August 1982, the U.S. Copyright Office of the Library of Congress registered Shiva Ayyadurai's email code and user's manual.  According to its records, these were the first works registered under the title, 'Email,' preceding the next such registration by two years.  Dr. Ayyadurai's registrations and deposits showed to the world his reduction to practice of his email system.  These registrations were remarkable for an eighteen-year old student, involving non-trivial procedures under a Copyright Act only recently open to protecting software.  Protecting software creations by copyright was the common wisdom of the day.  Had the patenting path for software been considered possible in 1982 generally and particularly by the MIT community, I have little doubt that Dr. Ayyadurai would have pursued it."

24.     Shekhar Shastri, a leading innovation expert, Head of Innovation Lab at Sun Financial, and East Coast Co-Chair of TiECON, has stated: "What's wonderful about the facts of the invention of email at a small medical college in Newark, NJ in 1978 is that this was not just an idea—but represented the end-to-end process of innovation from original conception, understanding the customer, building a solution that was customer-focused, that others of the time thought impossible, and the actual delivery, servicing, and ongoing maintenance to meet customer needs.  This is innovation.  This is what is remarkable about the invention of email by a 14-year-old Shiva Ayyadurai".

25.     Desh Deshpande, Ph.D., Life Member of the MIT Corporation, Founder and Former Chairman of Sycamore Networks, Co-Chairman of U.S. President Barack Obama's National Advisory Council on Innovation and Entrepreneurship, and Founder of the Deshpande Foundation for Innovation, has stated: "We at the Deshpande Foundation find Shiva [Ayyadurai] … an inspiration to all young innovators.  His invention of email symbolizes and expresses what parents around the world want their children to embrace—that innovation has no boundaries and human potential has no limits."

26.     Robert Field, Senior IS&T Programmer, has stated: "It was remarkable that Shiva [Ayyadurai] built such a large system with the limited resources that he had available…. Just from the shear point of view of being able to do that with any program was a monumental achievement, forgetting aside the innovativeness of what he was actually creating.  That was an act of real perseverance."

27. Deborah J. Nightingale, Retired Professor of Engineering Systems Division & Aeronautics and Astronautics at MIT, Former Director of the MIT Sociotechnical Systems Research Center, and Member of the National Academy of Engineering, has stated: "Dr. Shiva Ayyadurai is the inventor of email. There is no controversy here, except the one fabricated by these 'internet pioneers' to confuse journalists. Real journalists and scholars, without vested interests and prejudices, now need to set the record straight."

28. Sen Song, Ph.D., Professor of Computational Systems Biology for Biomedical Engineering and the Center for Brain-like Computation at Tsinghua University in Beijing, China, and Former Visiting Research Scientist for Microsoft Research, Asia, has stated: "I've known Dr. Shiva Ayyadurai since his Ph.D. research at MIT. He is one of the brightest scientists I've ever met…. What he accomplished, as a 14-year-old in 1978, with all the technological constraints, is simply amazing and sheer genius. It's time that the entire world recognizes the real origin of email."

29. Larry Weber, Chairman & CEO of Racepoint Global, Founder of Weber Shandwick, Co-Founder of the Massachusetts Innovation & Technology Exchange (MITX), and Executive Committee Member of The U.S. Council on Competitiveness, has stated: "For nearly fifteen years before the Web took off in 1993, people were using email on local area networks and wide area networks, independent of the Internet. Dr. Shiva Ayyadurai invented email in that business office environment to address a business need among ordinary people…. He is the world's leading expert on email, from its birth to today."

30.     Arvind Gupta, Co-Founder of the Digital India Foundation, has stated: "Shiva Ayyadurai is the father of email.  For far too long we have all been led to believe that communication's greatest innovations came out of defense research, inspired by the needs of war.  Email was created in a place of light and cooperation and it is important for people across the world to understand and appreciate this.… That's how email, as we know it, came to be."

31.     Robert Condon, Retired Captain & Staff of Commander in Chief Pacific Fleet for the United States Navy, and Former Senior Analyst for Booz Allen and Hamilton, Inc., has stated: "As early as 1972, I used naval messaging between ships and shore stations to transmit and receive electronic text messages using HF/UHF.  This was how electronic communications took place in the Navy at the time, and this was via an electronic teletype.  Later as a post-graduate officer in the United States Navy during 1978-1979, I sent text messages between computers on an intranet.  Regardless, these rudimentary messaging systems required complex commands to construct, send and receive a message.  None of these systems were email—the system, we all know today, or what Dr. Shiva Ayyadurai created in 1978."

32.     Rudolph Tanzi, one of TIME Magazine's 100 Most Influential People in the World, Smithsonian American Ingenuity Award Recipient, Joseph P. and Rose F. Kennedy Professor of Neurology, Vice-Chair, MGH Neurology (Research), Director of the Genetics and Aging Research Unit, MassGeneral Institute for Neurodegenerative Disease at Harvard Medical School, has stated: "As a scientist who discovered and characterized many of the known Alzheimer's disease genes including the first one, I am honored to partner with Dr. Shiva Ayyadurai towards finding a cure for Alzheimer's using his latest invention CytoSolve.  CytoSolve, like his invention of email, is a powerful systems platform for cooperation.  Dr.

Ayyadurai deserves the utmost honor and respect, as we would give any of the world's great innovators. He invented email as a kid, was recognized by MIT for that and other innovations, received many accolades, and created jobs for thousands of Americans, and more. He didn't make a penny for inventing email. Those who are now defaming him, thinking by screaming louder they can erase the historical facts of his inventing email, should be ashamed. These individuals have little to no history of innovation, discovery or really creating anything, themselves. This victory provides us with an opportunity to see through their irrational behavior, wherever they originate from, and recognize that Dr. Ayyadurai is a modern day Da Vinci. His life's work speaks for itself."

33.     Gerald E. Walker, Dr. Shiva Ayyadurai's Honor and Advanced Placement High School Chemistry Teacher, New Jersey State Teacher of the Year, and Ret. Principal of Livingston High School, has stated: "I remember vividly my conversations with Dr. Shiva Ayyadurai in the early stages of his initiative in 1978 when he was working hard on the creation and development of email. Knowing the basic concept of what he was creating and the fact that it was so innovative, I and another teacher in our science department recommended that he apply for the Westinghouse Talent Search Award for high school students. Email was to be the electronic version of interoffice mail systems. I specifically remember us looking at our school district's Interoffice Mail Envelope and thinking about Dr. Ayyadurai having told me that all the intricacies of this labor intensive system with its creation, delivery, receipt and distribution aspects would one day not be necessary. He had an objective/goal to replace it and other things with his invention. He worked diligently at both his school work and the creation of what we now know as email. Shiva was obviously very successful at both."

## DEFENDANTS' FALSE AND DEFAMATORY STATEMENTS ABOUT DR. SHIVA AYYADURAI

34. On or about September 2, 2014, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Why Is Huffington Post Running A Multi-Part Series To Promote The Lies Of A Guy Who Pretended to Invent Email?", a true and correct copy of which is attached hereto as **Exhibit G** (the "September 2, 2014 Article"). This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

    a. The headline: "Why Is Huffington Post Running A Multi-Part Series To Promote The Lies Of A Guy Who Pretended to Invent Email?"

    b. "… [Dr. Ayyadurai's] continued false insistence that he invented email is reaching really questionable levels."

    c. Dr. Ayyadurai is perpetuating a "fake story" with respect to his claims of invention of email.

    d. Dr. Ayyadurai and his friends "totally misrepresent" a technical report relating to computer messaging.

    e. "[Dr.] Ayyadurai has built up his entire reputation around the (entirely false) claim that he 'invented' email."

    f. "[Dr. Ayyadurai] misrepresents what a copyright registration means."

    g. "But [Dr. Ayyadurai is] simply not telling the truth when he claims to have invented email."

35.     On or about September 3, 2014, Defendants published on their website,

Techdirt.com, an article authored by Defendant Masnick with the headline: "Huffington Post

Doubles Down, Has MIT Professor Spread Blatant Falsehoods About Creation Of Email," a true

and correct copy of which is attached hereto as **Exhibit H** (the "September 3, 2014 Article").

This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants

knew to be false at the time the article was printed and published, or had reckless disregard for

the truth, including, among others:

a.  "[The Huffington Post article] is nothing more than a PR campaign for a liar."

b.  "[The Huffington Post article] just repeats the same false claims (using nearly
    identical language) as Ayyadurai and his friends in their original posts."

c.  "… Ayyadurai is using one of the oldest trolling tricks in the book, in
    pretending that everything **that he is actually doing** is actually being done
    nefariously *against him*." [Emphasis in original]

d.  "Instead, the only one whose entire 'identity' is built off a fake claim to have
    invented email is…Dr. Ayyadurai."

e.  "The only fabricated controversy is by [Dr. Ayyadurai]."

f.  "[Dr. Ayyadurai] claims that those of us debunking his bogus claim refused to
    look at the primary documents".

g.  "There is no controversy other than the one that [Dr. Ayyadurai is]
    manufacturing."

h.  "The question is whether or not Huffington Post will recognize that it's being
    used as part of an effort to drum up a faux controversy over something that is

blatantly untrue."

36.     On or about September 4, 2014, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Huffington Post Finally Responds, Stands By Its Completely Bogus, Totally Debunked 'History of Email' Series," a true and correct copy of which is attached hereto **as Exhibit I** (the "September 4, 2014 Article").  This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

a.     "Not only do Ayyadurai and his friends totally misrepresent reality, they fraudulently make claims that are easily debunked."

b.     ". . . [Dr. Ayyadurai's and his friends'] two biggest claims are (1) that the 'US government officially recognized Ayyadurai as the inventor of email' in 1982 and (2) that a leading analysis of electronic messaging in 1977, by Dave Crocker at RAND, claims that a full interoffice email system is 'impossible.' Both of these claims are absolutely **false**."  [Emphasis in original]

c.     ". . . [T]he first [claim] relies on blatantly misleading people about what a copyright is and what Ayyadurai copyrighted."

d.     "… [T]he fact that [Dr. Ayyadurai] and his friends continue to pretend that a copyright is something it is not is farcical."

e.     "[Dr. Ayyadurai and his friends] are relying on the ignorance of reporters and the public about what a copyright is."

f.  "[Dr. Ayyadurai and his friends] deliberately misrepresent what Crocker said by taking two separate sentences, from different pages in the report, removing the context around them, and mashing them together to pretend they say something they do not."

g.  "Computer historian Thomas Haigh has been tracking Ayyadurai's lies and misrepresentations for years, and alerts us to the fact that Ayyadurai's story has *notably changed* over the years, revealing additional misrepresentations and attempts to change history."  [Emphasis in original]

h.  "… Ayyadurai has conveniently tried to *rewrite his own history* to counter the debunkings."  [Emphasis in original]

i.  "So Ayyadurai changed the story, and pretended that he was both challenged and wrote his '50,000 lines of code' and got it all working in 1978."

j.  ". . . Ayyadurai and his friends are now trying to rewrite history . . ."

k.  "[The Huffington Post article] is merely a repeating of Ayyadurai's lies."

l.  "We're curious if Ayyadurai would like to try to present *any* evidence that a giant defense contractor is paying us off to (1) explain basic copyright law and (2) point to the actual 1977 paper that Ayyadurai himself totally misrepresents."  [Emphasis in original]

37.  On or about September 5, 2014, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Huffington Post And The View From Bogustan: Standing Behind Blatantly False Claims Isn't Journalism," a true and correct copy of which is attached hereto as **Exhibit J** (the "September 5, 2014 Article").

This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

a. The headline that Dr. Ayyadurai's claims with respect to invention of email are "blatantly false claims".

b. "The key arguments in [Dr. Ayyadurai's] claim are obviously false, and prey on (1) a misunderstanding or misrepresentation of copyright law and (2) an almost fraudulent misquoting of Dave Crocker…"

c. "… [The Huffington Post] won't retract and renounce this series [about Dr. Ayyadurai] as a PR campaign for a series of blatantly fraudulent claims . . ."

d. ". . . HuffPo Live . . . picked up on the completely bogus campaign and did a whole fawning interview with Ayyadurai, never once presenting the evidence that he's fraudulently misrepresenting basic facts."

e. ". . . HuffPo and HuffPo Live are . . . actually **actively promoting a lie**." [Emphasis in original]

f. ". . . Huffington Post is actively claiming that a clearly false story is true."

38. On or about September 8, 2014, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Huffington Post Finally Removes Most Articles About Fake Email Inventor; Meanwhile, Ayyadurai Threatens To Sue His Critics," a true and correct copy of which is attached hereto as **Exhibit K** (the "September 8, 2014 Article"). This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published,

or had reckless disregard for the truth, including, among others:

    a.   The headline which refers to Dr. Ayyadurai as "Fake Email Inventor".

    b.   "… Huffington Post [allowed] Shiva Ayyadurai and his friends to post an entirely bogus 'history of email' series, all designed to make it look like Ayyadurai himself had invented email - - a claim he's been making for a few years, despite it being entirely false, based on totally misrepresenting a number of things, including what copyright means, misquoting a 1977 research paper and playing 'no true scotsman' over what is a 'true' email system."

    c.   "… [The Huffington Post] allowed the series [on Dr. Ayyadurai] to go on with more false claims, and then told me it had 'added a clarification' that didn't clarify anything, but was a statement written by Ayyadurai, repeating the false claims."

    d.   "[The Huffington Post] admit[s] that [the series on Dr. Ayyadurai] was a 'blogger-generated series,' which is an attempt to distance the fake series, put together by Shiva Ayyadurai himself with PR guru Larry Weber, from Huffington Post's journalistic 'news' side."

    e.   "Ayyadurai and Weber had been banking on the fact that most people don't realize that the blogging side of HuffPo has no editorial controls to pretend that the series had some sort of journalistic credibility.  They appear to be promoting the fake articles everywhere…"

f. "There's no controversy at all. Ayyadurai is simply making false claims …"

g. ". . . '[G]oing to the people' is great, but historically [Dr. Ayyadurai has] done that with clearly bogus claims - - such as misquoting Dave Crocker's 1977 research and pretending that his 1982 copyright on his EMAIL software is the equivalent of a patent for the concept of email."

39. On or about September 9, 2014, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Fact Checking Is Dead: Mainstream Media Goes Nuts Repeating Debunked Claims By The Fake 'Inventor of Email'," a true and correct copy of which is attached hereto as **Exhibit L** (the "September 9, 2014 Article"). This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

a. The headline which refers to Dr. Ayyadurai as the "Fake Inventor of Email".

b. "Ayyadurai has built up quite a reputation around this false claim, even though it's been debunked over and over and over again."

c. "Ayyadurai keeps coming back, often moving the goalposts and changing his definitions, but still ultimately **flat out lying** in pretending to have 'invented' email." [Emphasis in original]

d. "Ayyadurai, however, has cleverly used misleading (to downright false) claims to make what appears on its face to be a credible story, fooling a number of gullible reporters."

e.  "… [M]any people [are] wondering if the whole HuffPo series [about Dr. Ayyadurai] was ramped up prior to [Ayyadurai's] 'wedding' to get the mainstream press to roll with the bogus claim.

f.  "Ayyadurai has been trying to make this lie [regarding the invention of email] stick for years … "

g.  "… [T]he mainstream press is repeating [Dr. Ayyadurai's] bogus claims as facts."

h.  "UPI has an article that doesn't mention Ayyadurai's false claims in the text of the article, but does falsely call him 'email creator' in the headline …"

i.  "Headline and Global News 'reporter' Dina Exil repeatedly calls Ayyadurai the inventor of email and also claims he 'is known for being the first person to invent email,' except none of that is true.  He's known for pretending that."

j.  "… Ayyadurai has been focused on using any and all press mentions as 'evidence' in his bogus campaign to declare himself the inventor of email…"

k.  "… [W]e have 'trusted' media like ABC and CBS repeating [Dr. Ayyadurai's] totally false claims…"

l.  "…Ayyadurai will continue to press his bogus claims again and again and again."

40.    On or about September 25, 2014, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Another Story Of A 'Fake' Brilliant Inventor?  Is 'Scorpion Walter O'Brien' A Real Computer Security Genius?", a true and correct copy of which is attached hereto as **Exhibit M** (the "September 25, 2014

Article").  This article contains false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

      a.   The headline which refers to Dr. Ayyadurai as "A 'Fake' Brilliant Inventor".

    41.   On or about March 8, 2016, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Guy Who Pretends He Invented Email Whines At Every Journalist For Writing Obit Of Guy Who Actually Helped Create Email," a true and correct copy of which is attached hereto as **Exhibit N** (the "March 8, 2016 Article").  This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

      a.   The headline which refers to Dr. Ayyadurai as the "Guy Who Pretends He Invented Email."

      b.   "… [Dr. Ayyadurai is] a guy who's basically staked his entire life on the misleading to false claim that he 'invented' email."

      c.   "Every couple of years [Dr. Ayyadurai] pops up again as he's able to fool some reporters into believing him."

      d.   "In 2012, [Dr. Ayyadurai] fooled the Washington Post and, astoundingly, the Smithsonian."

      e.   "Ayyadurai also totally misrepresents what copyright is, and insists that his copyright is just like a patent, because you couldn't patent software back then."

f.   "…Weber, Chomsky and Ayyadurai could spin this bizarre and totally made up story of a big American defense contractor wanting to rewrite history to write out someone with 'brown skin.'"

g.   "… [W]hen some point out that he's lying, Ayyadurai yells at them that they're repeating 'racist lies,'…"

42.   On or about May 11, 2016, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Guy Who Didn't Invent Email Sues Gawker For Pointing Out He Didn't Invent Email," a true and correct copy of which is attached hereto as **Exhibit O** (the "May 11, 2016 Article").  This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

a.   "[Dr. Ayyadurai] somehow got an entire series into the Huffington Post, which was clearly crated as a PR exercise in trying to rewrite history."

b.   "The mainstream press repeated [Dr. Ayyadurai's] bogus claims about inventing email after he married a TV star."

c.   "[Dr. Ayyadurai's lawsuit against Gawker] lays out Ayyadurai's highly misleading version of history, insisting again that getting the copyright on a program called EMAIL is the equivalent of 'inventing' email.  He continues to conflate patent and copyright law and misleadingly claim that because you couldn't get a patent on software at the time, a copyright is basically the same thing."

43.     On or about September 12, 2016, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Univision Execs Have No Backbone: Pull A Bunch Of Gawker Stories Over Legal Disputes." a true and correct copy of which is attached hereto as **Exhibit P** (the "September 12, 2016 Article").  This article contains false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

> a.   "We've discussed Ayyadurai and his bogus claims many times…"

44.     On or about November 2, 2016, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Ridiculous: Nick Denton Settles Remaining Charles Harder Lawsuits, Agrees To Delete Perfectly True Stories," a true and correct copy of which is attached hereto as **Exhibit Q** (the "November 2, 2016 Article"). This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

> a.   "… [Dr. Ayyadurai] has staked his entire identity on the outright false claim that he invented email."
>
> b.   "Ayyadurai is … obsessed with his false claim of creating email…"
>
> c.   "[Dr. Ayyadurai is] *blatantly misrepresenting history* for his own personal aggrandizing."  [Emphasis in original]

45.     On or about November 3, 2016, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Here's The Truth: Shiva Ayyadurai Didn't Invent Email," a true and correct copy of which is attached hereto as **Exhibit R** (the "November 3, 2016 Article").  This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

a.  "… Shiva Ayyadurai's claim that he invented email is complete bullshit.  It's not true.  Not even remotely."

b.  Dr. Ayyadurai is "hoping to confuse people who don't understand the difference between a copyright and a patent."

c.  "Ayyadurai has spent many years **falsely claiming to have invented email**…"  [Emphasis in original]

d.  "… Ayyadurai has put out a self-congratulatory press release claiming that the settlement supports his blatantly false claims …"

e.  "[Dr. Ayyadurai's settlement with Gawker] is a victory for trying to rewrite history and smear the actual truth."

46.     On or about November 6, 2016, Defendants published on their website, Techdirt.com, an article authored by Defendant Beadon with the headline: "Funniest/Most Insightful Comments Of The Week At Techdirt," a true and correct copy of which is attached hereto as **Exhibit S** (the "November 6, 2016 Article").  This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

a. "… Ayyadurai's bogus, lying, totally false claims."

b. Characterizing Dr. Ayyadurai as a "fraudster."

c. "Ayyadurai is particularly annoying because of his bogus claims of racism …"

d. "Ayyadurai's claims are annoying and absolutely false …

e. "Ayyadurai is a liar.  He is a fraud.  He is a charlatan."

47.     On or about November 7, 2016, Defendants published on their website, Techdirt.com, an article authored by Defendant Masnick with the headline: "Actual Creators Of Email Not At All Happy The Fake Creator Of Email Got Paid For His Bogus Claim," a true and correct copy of which is attached hereto as **Exhibit T** (the "November 7, 2016 Article").  This article contains multiple false statements of fact about Dr. Ayyadurai which Defendants knew to be false at the time the article was printed and published, or had reckless disregard for the truth, including, among others:

a. The headline which refers to Dr. Ayyadurai as "The Fake Creator Of Email [who] Got Paid For His Bogus Claim".

b. "…Shiva Ayyadurai, a guy who didn't invent email but has built his entire reputation on the false claim that he did, was able to cash in on the settlement agreed to by Nick Denton to end all of the Charles Harder-related lawsuits against Gawker."

c. "Ayyadurai did not invent email by any stretch of the imagination, but likes to go around falsely claiming he did, and smearing those who actually did the work."

d. "[Dr. Ayyadurai's settlement with Gawker is] a victory for the opposite of truth and shows how abusing the legal system can get you paid out…"

e. "…Ayyadurai took some comments from Crocker so out of context to be borderline fraudulent."

f. "Meanwhile, it appears that throughout all of this, Ayyadurai continues to fool people."

g. "Either way, as long as Ayyadurai continues to falsely hold himself out as the inventor of email, when he is not, people should continue to call out that his claims are simply false."

48. The forgoing false statements of fact were made by Defendants with the knowledge that they were false and likely to harm Dr. Ayyadurai's personal and professional reputation and business. The false and libelous statements in the above Techdirt Articles had the foreseeable effect of severely harming Dr. Ayyadurai's personal and professional reputation and business.

49. Defendants' false statements in the Techdirt Articles have had the effect of so severely discrediting Dr. Ayyadurai—based on the above false statements, including that he is a "fraud," that Dr. Ayyadurai's career has been and continues to be severely damaged. As a direct result of Defendants' publication of the false and defamatory statements about Dr. Ayyadurai, Dr. Ayyadurai lost contracts and renewals, lost opportunities for investment in his emerging companies, suffered substantial personal and professional reputational harm and suffered substantial harm to his career, business and income.

50.     As a result of Defendants' wrongful actions, anyone who searches Dr. Ayyadurai on Google or other search engines will see Defendants' false and libelous stories about him in the first page of search results across the world.  As a result, anyone who would otherwise have hired or partnered with Dr. Ayyadurai likely will decline, and have declined, to do so, believing Defendants' false and libelous statements about him to be true.  These statements also resulted in a wave of efforts by others to discredit Dr. Ayyadurai and erase him from the history of electronic communications, attacks on Wikipedia that remove reference to his contributions, and discrediting his other ongoing scientific contributions unrelated to email technology.  Defendants' actions foreseeably caused such results.

51.     Defendants are guilty of intentional misconduct.  Defendants had actual knowledge of the wrongfulness of the conduct described herein and the high probability that injury or damage to Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in substantial injury and damage to Dr. Ayyadurai.  For example, after Dr. Ayyadurai obtained a settlement from Gawker Media, LLC for similar false and libelous statements about him, Defendants did not remove any of the false and libelous statements on Techdirt.com and continued to publish similar false and libelous statements about Dr. Ayyadurai, even though Defendants had actual notice of this settlement as evidenced by the November 7, 2016 Article.

52.     Defendants' conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to Dr. Ayyadurai's rights.

53.     Defendants' actions described herein also have had the foreseeable effect of causing severe emotional distress to Dr. Ayyadurai, and did cause him to suffer severe emotional distress.

54.     Dr. Ayyadurai requests herein all available legal and equitable remedies, to the maximum extent permissible by law, including without limitation, compensatory damages in an amount not less than Fifteen Million Dollars ($15,000,000) and punitive damages.

## FIRST CAUSE OF ACTION

### Libel

### (Against All Defendants)

55.     Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56.     As described herein, the September 4, 2014 Article, the September 5, 2014 Article, and the November 6, 2016 Article arise to the level of defamation *per se*, in that they falsely state that Dr. Ayyadurai is "a fraud," "fraudulently misrepresenting facts," "fraudulently making claims," making "blatantly fraudulent claims," and a "fraudster," thus falsely accusing Dr. Ayyadurai of a crime and causing prejudice to his personal and professional reputation and business.

57.     As described in paragraphs 34 through 47 of this Complaint, the fourteen Techdirt Articles published by Defendants contain numerous additional false and statements of fact regarding Dr. Ayyadurai.

58.     These false statements wrongly accuse Dr. Ayyadurai of having made statements and acted in a manner that would subject him to hatred, distrust, contempt, aversion, ridicule and disgrace in the minds of a substantial number in the community, and were calculated to harm his social and business relationships, and did harm his social and business relationships.

59.     The statements made intentionally, purposefully and with actual malice by Defendants were false and no applicable privilege or authorization protecting the statements can attach to them.

60.     Plaintiff has been seriously damaged as a direct and proximate cause of the falsity of the statements made by Defendants in an amount to be determined at trial.  The false statements attribute conduct, characteristics and conditions incompatible with the proper exercise of Plaintiff's business and duties as an inventor, scientist and entrepreneur.  Because the statements were widely disseminated on the Internet, they were also likely and intended to hold the Plaintiff up to ridicule and to damage his social and business relationships.

61.     The above-quoted published statements constitute egregious conduct constituting moral turpitude.  As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages relating to Defendants' making of the above-quoted defamatory statements, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Intentional Interference with Prospective Economic Advantage

### (Against All Defendants)

62.     Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.     Defendants knew that Plaintiff, being a scientist, inventor, business owner, and entrepreneur, had business relationships that were ongoing during the time of Defendants' publication of the fourteen Techdirt Articles, and had a reasonable expectation of entering into valid business relationships with additional individuals and entities, including with companies and universities, which would have been completed had it not been for Defendants' wrongful acts.

64.     Defendants acted solely out of malice and/or used dishonest, unfair or improper means to interfere with Plaintiff's actual and prospective business relationships, before they defamed him.

65.     Defendants, through the misconduct alleged herein, intended to harm Plaintiff by intentionally and unjustifiably interfering with his actual and prospective business relationships.

66.     Defendants have seriously damaged Plaintiff's actual and prospective business relationships as a direct and proximate cause of these acts.

67.     The above-described conduct is egregious and constitutes moral turpitude.  As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

68.     Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     Defendants intentionally wrote the fourteen Techdirt Articles to humiliate, defame, and embarrass Dr. Ayyadurai.

70.     Defendants' posting of the Techdirt Articles was extreme and outrageous in that the contents falsely accuse him of being a fraud and lying about his professional accomplishments and career.

71.     Dr. Ayyadurai has suffered severe emotional distress as a result of the content written in the Techdirt Articles, and the ramifications the false content has had on his personal life and professional reputation have been immense.

72.     The above-described conduct is egregious and constitutes moral turpitude.  As such, in addition to compensatory damages and/or presumed damages, Plaintiff demands punitive damages in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shiva Ayyadurai respectfully requests:

1.     An award of damages to Plaintiff in an amount to be determined at trial, but in all events not less than Fifteen Million Dollars ($15,000,000);

2.     An award of punitive damages to Plaintiff in an amount to be determined at trial;

3.     An order requiring Defendants to make a public retraction of the false statements;

4.     An order granting preliminary and permanent injunctive relief to prevent Defendants from making further defamatory statements about Plaintiff; and

5.    An award of such other and further relief as the Court may deem just and proper.

Dated: January 4, 2017                     Respectfully submitted,

                                           **CORNELL DOLAN, P.C.**

                                           By: _____
                                           Timothy Cornell
                                           BBO # 654412
                                           One International Place, Suite 1400
                                           Boston, Massachusetts 02110
                                           Tel: (617) 535-7763
                                           Fax: (617) 535-7721
                                           tcornell@cornelldolan.com

                                           **HARDER MIRELL & ABRAMS LLP**

                                           By: _____

                                           Charles J. Harder
                                           (*Pro Hac Vice application to be filed*)
                                           132 S. Rodeo Drive, Fourth Floor
                                           Beverly Hills, California 90212
                                           Tel: (424) 203-1600
                                           Fax: (424) 203-1601
                                           charder@hmafirm.com

                                           *Counsel for Plaintiff*