UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHIVA AYYADURAI, an individual, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. 17-cv-10011-FDS |
| FLOOR64, INC., a California corporation d/b/a TECHDIRT; MICHAEL DAVID MASNICK, an individual; LEIGH BEADON, an individual; and DOES 1-20, | ) |
| Defendants. | ) |

**MEMORANDUM OF DEFENDANTS
FLOOR64, INC. AND MICHAEL MASNICK IN SUPPORT OF THEIR
SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT
PURSUANT TO THE CALIFORNIA ANTI-SLAPP LAW**

INTRODUCTION

Plaintiff Shiva Ayyadurai has sued two California defendants, Floor 64, Inc. ("Floor64") and Michael Masnick (collectively "Defendants"), solely for constitutionally protected statements on a matter of public interest. The policy of the state of California, reflected in its Anti-SLAPP Law, Cal. Civ. Proc. Code, § 425.16, is to vigorously defend the rights of its citizens to freedom of speech against actions of this nature. Accordingly, Defendants bring this Special Motion to Strike pursuant to that statute, which protects any party that is sued for conduct "in furtherance of the exercise of the constitutional right . . . of free speech in connection with . . . an issue of public interest." Id. For the reasons set forth below and in Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), Plaintiff cannot demonstrate a probability of success on any of the claims he has asserted. Cal. Civ. Proc. Code § 425.16(b), (e). Accordingly,

his Complaint should be stricken and Defendants awarded their reasonable costs and attorneys' fees.

## BACKGROUND

Defendants Floor64, Inc. and Michael Masnick incorporate by reference the "Background" section of their memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (the "Rule 12 Memo"), and further state as follows:

1. Floor64, Inc. ("Floor64") is a California corporation with its principal place of business in Redwood City, California. Floor64 has no operations in Massachusetts, nor does it have any employees located in Massachusetts. (Masnick Aff. ¶ 2).

2. Floor64 publishes Techdirt.com, a blog covering the United States technology industry, which is centered in California. (Id., ¶ 3).

3. Defendant Michael Masnick is a resident of California. (Id., ¶ 4).

4. Plaintiff Shiva Ayyadurai's Complaint is based on 14 posts on Techdirt between 2014 and 2016.  None of the posts at issue was written in Massachusetts.  (Masnick Aff. ¶ 6). Thirteen of the articles were written by Michael Masnick while in California, and one was published under the byline of Leigh Beadon, who resides in Toronto, Ontario.  (Id. ¶¶ 6-7).

## ARGUMENT

**I.    THE CALIFORNIA ANTI-SLAPP STATUTE APPLIES TO THIS CASE.**

Under Massachusetts choice of law principles, California has a greater interest in the application of its anti-SLAPP law to this case than does the Commonwealth of Massachusetts. See Restatement (Second) of Conflict of Laws § 145. Accordingly, California anti-SLAPP law should be held to apply to this motion.

  A. <u>Anti-SLAPP Laws Generally</u>

  Twenty-eight states and the District of Columbia have enacted statutes to encourage members of the public to speak out on important issues by protecting them from "strategic lawsuits against public participation," or "SLAPP" suits.[1]  A SLAPP suit is defined as "one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1109 (9th Cir. 2003). In general, "[t]he objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech." <u>Duracraft Corp. v. Holmes Prod. Corp.</u>, 427 Mass. 156, 161 (1998). While the anti-SLAPP statutes differ in their scope and effect, they typically permit a party who is targeted by such a lawsuit based on protected activity to bring a "special motion" under the statute, putting the burden on the plaintiff demonstrate a probability of success. <u>See</u> "Anti-SLAPP Laws," 61A Am. Jur. 2d Pleading § 435. Both Massachusetts and California have enacted such statutes. <u>See</u> Mass. Gen. Laws c. 231, § 59H; Cal. Civ. Proc. Code § 425.16. The First Circuit has held that anti-SLAPP laws govern state-law claims brought in federal court. <u>Godin v. Schencks</u>, 629 F.3d 79, 92 (1st Cir. 2010).

  B. <u>The Massachusetts and California Anti-SLAPP Laws</u>

  To determine which state's anti-SLAPP law to apply in this diversity case, the Court must "employ the choice-of-law principles of the forum state." <u>Auto Europe, LLC v. Connecticut Indem. Co.</u>, 321 F.3d 60, 64 (1st Cir. 2003). In Massachusetts, "[a]n initial task of a choice-of-law analysis is to determine whether there is an actual conflict between the substantive law of the interested jurisdictions." <u>Levin v. Dalva Bros., Inc.</u>, 459 F.3d 68, 73 (1st Cir. 2006).

---

[1] http://www.anti-slapp.org/your-states-free-speech-protection/

Here, a conflict exists because the California anti-SLAPP statute protects a broader range of speech than its Massachusetts analogue. Under Cal. Civ. Proc. Code, § 425.16, a party may bring a special motion to strike where it is sued for an "act in furtherance of a person's right of petition <u>or free speech</u> under the United States or California Constitution in connection with a public issue" or "an issue of public interest." Cal. Civ. Proc. Code § 425.16(e) (emphasis supplied). In Massachusetts, by contrast, anti-SLAPP protection applies only where a party is sued for the exercise of the "right to petition," meaning (in general) "statements made to influence, inform, or at the very least, reach governmental bodies—either directly or indirectly." <u>N. Am. Expositions Co. Ltd. P'ship v. Corcoran</u>, 452 Mass. 852, 862 (2009) (internal quotation omitted); <u>see also</u> <u>Fustolo v. Hollander</u>, 455 Mass. 861, 871 (2010) (noting that "California's anti-SLAPP statute, by its terms, has a broader scope than § 59H, expressly reaching 'free speech' in addition to 'right of petition,'" whereas "[t]he Massachusetts Legislature did not include 'free speech' in § 59H.")  While Plaintiff's claims clearly target the exercise of "free speech in connection with a public issue or an issue of public interest," Cal. Civ. Code, § 425.16(e)(3)-(4), the claims likely are not subject to the Massachusetts' statute's definition of "a party's exercise of its right of petition." Mass. Gen. Laws c. 231, § 59H.[2]

C.      <u>Massachusetts Law Requires Application of California's Anti-SLAPP Law.</u>

Massachusetts courts consistently rely on the principles set forth in the Restatement (Second) of Conflict of Laws to determine which state's law will govern. <u>Cosme v. Whitin</u>

---

[2] Under the Massachusetts statute, "'a party's exercise of its right of petition' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government." Mass. Gen. Laws c. 231, § 59H.

Mach. Works, Inc., 417 Mass. 643, 646 (1994) ("In examining conflicts issues using a functional approach, . . . we consider choice-of-law issues by assessing various choice-influencing considerations, including those provided in the Restatement (Second) of Conflict of Laws."). Under Section 145 of the Restatement, the parties' rights with respect to "an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." (Emphasis supplied.) Section 145 requires courts to take into account four factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) Conflict of Laws, § 145; Lou v. Otis Elevator Co., 77 Mass. App. Ct. 571, 586 (2010) (applying Section 145). These factors must be "evaluated according to their relative importance with respect to the particular issue." Lou, 77 Mass. App. Ct. at 586 (emphasis supplied). In addition, Section 145 references the choice of law factors identified in Restatement Section 6, including the relevant policies of the forum and "other interested states," and "the relative interests of those states in the determination of the particular issue."[3]

Applying these principles, courts have held that in the case of an alleged defamation published to a wide audience, the anti-SLAPP statute of the speaker's jurisdiction should control, not that of the state where the plaintiff happens to reside. Sarver v. Chartier, 813 F.3d 891, 898 (9th Cir. 2016) (applying anti-SLAPP law of California defendants rather than New Jersey

---

[3] The full list of factors is as follows: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6.

plaintiff); Global Relief v. New York Times Co., No. 01C8821, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002) (applying anti-SLAPP law of California, the state of the speaker's residence, because it "has a great interest in determining how much protection to give California speakers"); Chi v. Loyola University Medical Center, 787 F. Supp. 2d 797 (N.D. Ill. 2011) ("[T]he place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on [the anti-SLAPP] issue," because "a state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders."); Dawe v. Corrections USA, No. CIV. S-07-1790, 2009 WL 1420969 (E.D. Cal. May 20, 2009) (applying California Anti-SLAPP law in claim brought by Wyoming resident).

For example, in Sarver v. Chartier, the Ninth Circuit applied the California Anti-SLAPP law to a defamation case brought by a U.S. Army sergeant, residing in New Jersey, against California-based defendants who produced the film *The Hurt Locker*.  Sarver v. Chartier, 813 F.3d 891, 898 (9th Cir. 2016). The court noted that "the second and third factors" set forth in Restatement Section 145 "weigh strongly in favor of application of California law" because "[t]he conduct causing the alleged injury—the production of *The Hurt Locker*—took place in California," and almost all corporate defendants "are incorporated and alleged to be conducting business in California." Id. The "place where the injury occurred," by contrast, was entitled to little weight: "Because the film was distributed nationwide and Sarver's alleged injuries would most likely have occurred in multiple states, 'the place of injury will not play an important role in the selection of the state of applicable law.'" Id. at 899, quoting Restatement (Second) of Conflicts § 145 cmt. e. Moreover, "California has expressed a strong interest in enforcing its anti-SLAPP law to 'encourage continued participation in matters of public significance' and to

protect against 'a disturbing increase in lawsuits brought primarily to chill the valid exercise' of constitutionally protected speech," and courts have been instructed to construe it "broadly." Id. "On balance," the court held, "the interests of interstate comity and the competing interests of the states tilt in favor of applying California" anti-SLAPP law. Sarver, 813 F.3d at 899.

The Ninth Circuit's analysis applies equally—if not even more forcefully—to this case. The Defendants' "conduct causing the alleged injury,"—the writing and publication of the blog posts at issue—"took place in California," Sarver, 813 F.3d at 898, not in Massachusetts. (Masnick Aff. ¶ 6). The sole corporate defendant is "incorporated and alleged to be conducting business in California." Id.; see Compl. ¶¶ 6-7 (alleging that Floor64 and Masnick reside in California); (Masnick Aff., ¶ 2). As for the location of the alleged injury, the blog posts, like the film in Sarver, were "distributed nationwide," and indeed, worldwide. Sarver, 813 F.3d at 899. Ayyadurai himself alleges that "anyone who searches Dr. Ayyadurai on Google or other search engines . . . across the world" will find the posts "in the first page of search results." (Compl., ¶ 50 (emphasis supplied)). Ayyadurai also alleges that he is "a world-renowned scientist, inventor, lecturer, philanthropist and entrepreneur" who "has been recognized internationally" and "has been a speaker at numerous international forums." (Compl. ¶ 2). Accordingly, even more than in Sgt. Sarver's case, "the place where the injury occurred" is (if anywhere) "multiple states," not just, or even primarily, Massachusetts. Sarver, 813 F.3d at 899.

Similarly, in Diamond Ranch Acad., Inc. v. Filer, 117 F. Supp. 3d 1313, 1323 (D. Utah 2015), the defendants, located in California, were alleged to have made defamatory statements about a Utah plaintiff on a website and in social media pages and blogs. The district court for the District of Utah applied the anti-SLAPP law of California, even though Utah substantive defamation law would govern, because California had "'the most significant relationship' to the

7

anti-SLAPP issue." Id. The precise "issue" of anti-SLAPP protection, the court held, "concerns immunity from trial for alleged defamation, not whether a party has been defamed." Id. at 1322, citing Underground Solutions, Inc. v. Palermo, 41 F. Supp. 3d 720, 720 (N.D. Ill. 2014) ("the anti-SLAPP question involves whether a statement is privileged, not whether its content is defamatory"). In so holding, the court applied the doctrine of "dépeçage," the "widely approved process whereby the rules of different states are applied on the basis of the precise issue involved." Id. The concept is also recognized in Massachusetts. See Choate, Hall & Stewart v. SCA Servs., Inc., 378 Mass. 535, 541-42 (1979) ("Of course, there is nothing unusual about the laws of different States applying respectively to various phases of a single transaction or incident."); see Restatement § 145, cmt. d ("The courts have long recognized that they are not bound to decide all issues under the local law of a single state. . . .").

Accordingly, even if Massachusetts defamation law were held to apply to Ayyadurai's claims, the Court should nonetheless apply California law to the anti-SLAPP question, which has to do with immunity from suit rather than substantive defamation law. As the Massachusetts Appeals Court explained in Lou, 77 Mass. App. Ct. at 586 n.27, "the place where an injury occurs is of great significance in determining which law to apply on an issue implicating conduct regulation," whereas "[a]n issue of immunity . . . by comparison, will place greater emphasis on the State in which the parties are domiciled."

Finally, California "has a great interest in determining how much protection to give California speakers" such as the Defendants here. Global Relief, No. 01C8821, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002); Chi v. Loyola University Medical Center, 787 F. Supp. 2d 797 (N.D. Ill. 2011) ("A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's

8

borders."). No countervailing interest points to application of the Massachusetts anti-SLAPP law in this case. Accordingly, California, not Massachusetts, has "the most significant relationship" to the anti-SLAPP issue, and its law should be held to apply.

## II. AYYADURAI'S COMPLAINT IS BASED ON SPEECH REGARDING A PUBLIC ISSUE, AND IS THEREFORE SUBJECT TO THE ANTI-SLAPP LAW.

Born of "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech," Cal. Civ. Proc. Code, § 425.16, the California Anti-SLAPP Law is intended to "nip SLAPP litigation in the bud[,]" by quickly disposing of claims that target the exercise of free-speech rights. Braun v. Chronicle Publ'g Co., 52 Cal. App. 4th 1036, 1042 (1997). Under the California Anti-SLAPP Law, any "cause of action against a person arising from any act . . . in furtherance of the person's right of . . . free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code, § 425.16(b)(1). The statute is to "be construed broadly." Id. at § 425.16(a)(1). A copy of the statute is attached hereto as Exhibit 1.

The California Anti-SLAPP Law imposes a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Navellier v. Sletten, 29 Cal. 4th 82, 88 (2002). To make such a showing here, Defendants need only demonstrate that Ayyadurai's claims arise from actions that "fit[] one of the categories spelled out in . . . section 425.16, subdivision (e)." Id. One of those categories, contained in subdivision (e)(4), is "conduct [by the Defendants] in furtherance of the exercise of the constitutional right . . . of free speech in connection with . . . an issue of public interest." Second, after the Defendants make their threshold showing, the burden shifts to the Plaintiff to establish by competent evidence "a probability that [he] will prevail on the claim[s]."

Cal. Civ. Proc. Code, § 425.16(b)(1). If the Plaintiff cannot meet that burden, his claims must be stricken with prejudice.

The blog posts at issue here fall squarely within the scope of subsection (e)(4), which extends protection to any statement made "in connection with . . . an issue of public interest." California courts have held that any statement about "a person . . .in the public eye" or "a topic of widespread, public interest" is within the protection of subsection (e)(4). Hilton v. Hallmark Cards, 599 F.3d 894, 907 (9th Cir. 2010) citing Rivero v. Am. Fed'n of State, Cty., & Mun. Employees, AFL-CIO, 105 Cal. App. 4th 913, 924, (2003)). It has been applied broadly. See, e.g. Hilton, 599 F.3d at 900 (birthday card poking fun at celebrity Paris Hilton was on an issue of public interest); Seeling v. Infinity Broadcasting, 97 Cal. App. 4th 798, 807-808 (2002) (opinions expressed during radio show critical of participant on reality television show involved matter of public interest). Simply put, an "issue of public interest" is "any issue in which the public is interested." Nygard v. Uusi-Kerttula, 159 Cal. App. 4th 1027, 1043 (2008).

There can be no question that Ayyadurai is a "person . . . in the public eye." Id. He himself alleges that he "is a world-renowned scientist, inventor, lecturer, philanthropist and entrepreneur," and he references and attaches many of his press mentions as proof. Compl., ¶ 1 (referencing Ex. E, Doug Aamoth, "The Man Who Invented Email," *TIME* magazine, Nov. 15, 2011; Complaint Ex. F, Caleb Garling, "Who Invented Email? Just Ask . . . Noam Chomsky," *Wired* magazine, June 16, 2012). Ayyadurai's website declares that he "has appeared in The MIT Technology Review, The Wall Street Journal, New York Times, NBC News, USA Today and other major media." He also made national news when he and actress Fran Drescher (star of the

sitcom *The Nanny*) announced they had married.[4] Given this attention—much of it encouraged by Ayyadurai himself—he can hardly deny that he is a person "in the public eye."

The blog posts are also on "a topic of widespread, public interest," Hilton, 599 F.3d at 907, namely, the question of who should receive credit for the development of a ubiquitous technology that fundamentally changed the nature of human correspondence. Plaintiff's Complaint, once again, points to several examples of television, magazine, and other media coverage of the history of email (Compl. ¶ 1, Exs. E and F), and the blog posts mention many more. (Compl. Exs. G-K (discussing Huffington Post series); Ex. L (mentioning stories in, *inter alia, People* magazine, *E-Online*, ABC News/*Good Morning America*, CBS News, UPI, the *Daily Mail*, and *US* magazine). Accordingly, each of the articles is plainly protected by the California anti-SLAPP statute, and the burden shifts to Ayyadurai, as set forth below.

### III. PLAINTIFF CANNOT DEMONSTRATE A PROBABILITY OF PREVAILING ON HIS CLAIMS.

Plaintiff cannot demonstrate a "probability" of prevailing on his claims, as required under Cal. Civ. Proc. Code § 425.16. For one thing, as explained in the memorandum supporting Defendants' Rule 12 motion (incorporated here by reference), all the claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). However, even if this Court were to determine that the Complaint states a claim for Rule 12 purposes, still that would not be enough to stave off dismissal under the anti-SLAPP statute. A plaintiff seeking to avoid dismissal under the anti-SLAPP law must do more than merely *state* a claim; he must "'establish evidentiary support for [his] claim.'" Navellier, 106 Cal. App. 4th at 775-76; Mindys Cosmetics v. Dakar, 611 F.3d 590, 599 (9th Cir. 2010) (plaintiff must adduce "competent, admissible evidence" showing that he has

---

[4] Zayda Rivera, "Fran Drescher Marries Man Claiming to be Email Inventor," New York Daily News, Sept. 10, 2014 (available at http://www.nydailynews.com/entertainment/gossip/fran-drescher-marries-email-inventor-shiva-ayyadurai-article-1.1932387).

a legally sufficient claim). Ayyadurai's claims must survive a test akin to summary judgment, Taus v. Loftus, 40 Cal. 4th 684, 714 (2007), including a "sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Id. at 713-14. Ayyadurai must also "meet the defendant[s'] constitutional defenses[.]" Robertson v. Rodriguez, 36 Cal. App. 4th 347, 359 (1995). He cannot do so, for a number of reasons.

*First*, as explained in Defendants' Rule 12 motion, Plaintiff's defamation claim is based solely on non-actionable opinions supported by disclosed non-defamatory facts—not on any defamatory statement of fact that is "provable as false." Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 727 (1st Cir. 1992). Whether Ayyadurai's accomplishments as a 14-year-old mean that he is the "inventor" of email is not something that can be factually proven. See Gray v. St. Martin's Press, Inc., 221 F.3d 243 (2000) (statement is non-actionable opinion where it was nothing more than a "subjective characterization"). The Defendants' blog posts fully disclose (and even hyperlink to) all of the facts upon which they base their conclusion that Ayyadurai did not invent email, and judgments based on such disclosed facts are non-actionable. Phantom Touring, Inc., 953 F.2d 724, 730 (1st Cir. 1992) (defendant's "full disclosure of the facts underlying his judgment" render statement protected opinion). Additionally, while Ayyadurai may not enjoy being called a "fake" or a "liar," such rhetorical hyperbole is not actionable in the absence of a false and defamatory statement of fact. Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler, 398 U.S. 6, 14 (1970) (the word "blackmail" is not actionable because it was merely hyperbole); Phantom Touring, 953 F.2d at 728 (accusation that musical was a "fake" and "a rip-off, a fraud, a scandal, a snake-oil job" found to be hyperbolic and incapable of objective proof); McCabe v. Rattiner, 814 F.2d 839, 842-43 (1st Cir.1987) (accusation that plaintiff was running a "scam," was opinion protected by the First

Amendment); Gray, 221 F.3d at 248-49 (statement that plaintiff "faked" his closeness to the president found to be non-actionable opinion).

*Second*, even if the blog posts were somehow deemed actionable, Plaintiff cannot provide "clear and convincing" evidence that Defendants published them with "actual malice," meaning with "actual knowledge of the falsity or with reckless disregard for the truth." Levesque v. Doocy, 560 F.3d 82, 90 (1st Cir. 2009), citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964). As Defendants point out in their Rule 12 motion, Plaintiff fails even to *allege* such facts—much less can he come forward with sufficient evidence to satisfy the applicable constitutional standard of "convincing clarity." Levesque, 560 F.3d at 87.

*Third*, Plaintiff's tag-along claims of intentional interference with prospective economic advantage and intentional infliction of emotional distress are "simply a restatement of his defamation claim under a different heading." Brown v. Hearst Corp., 54 F.3d 21, 27 (1st Cir. 1995). Thus, the same constitutional constraints that require dismissal of his defamation claim doom his tortious interference and intentional infliction counts as well. Shay v. Walters, 702 F.3d 76, 83 (1st Cir. 2012) (affirming dismissal of IIED claim where it was based on the same facts as the plaintiff's defamation claim and where actual malice was insufficiently pleaded (citing Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56–57 (1988)); Piccone v. Bartels, 785 F.3d 766, 774 (1st Cir. 2015) (intentional interference with business relationship claim dismissed where it was based on same conduct as defamation claim and where the statements at issue were constitutionally protected opinions).

CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Special Motion to Strike, dismiss this lawsuit with prejudice, and award them their attorneys' fees and costs as required by Code of Civil Procedure Section 425.16(c).

    Respectfully Submitted,

    FLOOR64, INC. and MICHAEL MASNICK,

    By their attorneys,

    */s/ Robert A. Bertsche*
    Robert A. Bertsche (BBO #554333)
    rbertsche@princelobel.com
    Jeffrey J. Pyle (BBO #647438)
    jpyle@princelobel.com
    Thomas Sutcliffe (BBO #675379)
    tsutcliffe@princelobel.com
    PRINCE LOBEL TYE LLP
    One International Place, Suite 3700
    Boston, Massachusetts 02110
    Tel: (617) 456-8018

Dated: February 17, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first-class mail to any non-registered participants.

    */s/ Robert A. Bertsche*
    Robert A. Bertsche

1

**§ 425.16. Anti-SLAPP motion, CA CIV PRO § 425.16**

West's Annotated California Codes
 Code of Civil Procedure (Refs & Annos)
  Part 2. Of Civil Actions (Refs & Annos)
   Title 6. Of the Pleadings in Civil Actions
    Chapter 2. Pleadings Demanding Relief (Refs & Annos)
     Article 1. General Provisions (Refs & Annos)

West's Ann.Cal.C.C.P. § 425.16

§ 425.16. Anti-SLAPP motion

Effective: January 1, 2015

Currentness

(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c)(1) Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

(2) A defendant who prevails on a special motion to strike in an action subject to paragraph (1) shall not be entitled to attorney's fees and costs if that cause of action is brought pursuant to Section 6259, 11130, 11130.3, 54960, or 54960.1 of the Government Code. Nothing in this paragraph shall be construed to prevent a prevailing defendant from recovering attorney's fees and costs pursuant to subdivision (d) of Section 6259, or Section 11130.5 or 54960.5, of the Government Code.

(d) This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

(e) As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

(h) For purposes of this section, "complaint" includes "cross-complaint" and "petition," "plaintiff" includes "cross-complainant" and "petitioner," and "defendant" includes "cross-defendant" and "respondent."

(i) An order granting or denying a special motion to strike shall be appealable under Section 904.1.

(j)(1) Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by e-mail or facsimile, a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

(2) The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media.

**Credits**

(Added by Stats.1992, c. 726 (S.B.1264), § 2. Amended by Stats.1993, c. 1239 (S.B.9), § 1; Stats.1997, c. 271 (S.B.1296), § 1; Stats.1999, c. 960 (A.B.1675), § 1, eff. Oct. 10, 1999; Stats.2005, c. 535 (A.B.1158), § 1, eff. Oct. 5, 2005; Stats.2009, c. 65 (S.B.786), § 1; Stats.2010, c. 328 (S.B.1330), § 34; Stats.2014, c. 71 (S.B.1304), § 17, eff. Jan. 1, 2015.)

Notes of Decisions (3808)

West's Ann. Cal. C.C.P. § 425.16, CA CIV PRO § 425.16
Current with all 2016 Reg.Sess. laws, Ch. 8 of 2015-2016 2nd Ex.Sess., and all propositions on 2016 ballot.

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.