UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                )
SHIVA AYYADURAI, an individual,                 )
                                                )
                    Plaintiff,                  )
                                                )
        v.                                      )        C.A. No. 17-cv-10011-FDS
                                                )
FLOOR64, INC., a California corporation         )
d/b/a TECHDIRT; MICHAEL DAVID                   )
MASNICK, an individual; LEIGH                   )
BEADON, an individual; and DOES 1-20,           )
                                                )
                    Defendants.                 )
_____ )

**LEIGH BEADON'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**INTRODUCTION**

On January 4, 2017, Plaintiff Shiva Ayyadurai, the self-proclaimed "inventor" of email, filed this defamation action in an attempt to silence Techdirt.com, a small technology website that has questioned his claim to fame. On February 17, 2017, Defendants Floor64, Inc. ("Floor64") and Michael Masnick ("Masnick") moved to dismiss Plaintiff's Complaint, arguing, among other things, that (1) all of their allegedly defamatory statements were constitutionally protected opinions and (2) Plaintiff, a self-proclaimed public figure, had failed to adequately plead "actual malice." See "Motion to Dismiss of Floor64, Inc. and Michael Masnick Pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6)" (the "Floor64 Rule 12(b)(6) Motion") (Dkt. 11) and memorandum in support thereof (Dkt. 19).

Not content to sue only Techdirt and its founder, Plaintiff has also brought claims against Leigh Beadon, a writer for the site. Beadon was served with process on February 21. Beadon

brings this motion to dismiss for failure to state a claim upon which relief can be granted, because Plaintiff's claims against Beadon have all the fatal flaws of those against the other defendants, and more.

First, Plaintiff's claims against Beadon are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230"), because the only allegedly defamatory statements the Complaint attributes to Beadon are ones he copied verbatim from a reader comment on Techdirt by an anonymous third party. Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Plaintiff's claims against Beadon treat him as the publisher of third-party content, and are therefore barred. And Beadon cannot be held liable for content he neither wrote nor published.

Second, as explained in detail in Masnick's and Floor64's memorandum of law in support of their motion to dismiss pursuant to Rule 12(b)(6) (the "Floor64 Rule 12(b)(6) Memorandum") (Dkt. 19), Plaintiff's claims fail because all the statements at issue are constitutionally protected opinions. Third, the Complaint fails to allege facts showing actual malice, as is required of a public figure like Plaintiff.  Finally, Plaintiff's tag-along claims for intentional interference with prospective economic advantage and intentional infliction of emotional distress suffer the same deficiencies as his libel claim.  Accordingly, all claims against Beadon should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## **BACKGROUND**[1]

Leigh Beadon works as a writer for Techdirt.com. (Compl. ¶ 8.) Plaintiff's Complaint contains only one allegation specific to Beadon: that he "authored" a November 6, 2016, post entitled "Funniest/Most Insightful Comments Of The Week At Techdirt" (the "November 6

---

[1] Beadon incorporates by reference the "Background" section of the Floor64 Rule 12(b)(6) Memorandum.

Post"). (Compl. ¶ 46, Ex. S.) That post compiled a number of reader comments that had been posted to the website by users during the preceding week, and presented them along with short introductory remarks from Beadon. One of the third-party comments, posted anonymously, criticized Plaintiff's claim to have "invented" email and on that basis labeled him a "fraud." The commenter stated that he was unable to find any mention of Plaintiff or his software code in any of the primary documents from the time when email was developed, and contrasted that absence of information to the "thousands" of mentions of other computer scientists from that time who were actively working to write code, fix bugs, and provide assistance in developing email software. (Compl., Ex. S at 2-3.) The November 6 Post, for which Plaintiff seeks to obtain money damages from Beadon, reprints the anonymous reader comment in its entirety without changing its content. It also hyperlinks to the original comment, so that readers can review the poster's commentary in full. (Id.)

Plaintiff seeks to hold Beadon responsible for five allegedly defamatory references in the November 6 Post, all of which are derived, verbatim, from the third-party reader's comment:

1. ". . . Ayyadurai's bogus, lying, totally false claims."

2. Characterizing Plaintiff as a "fraudster."

3. "Ayyadurai is particularly annoying because of his bogus claims of racism. . . ."

4. "Ayyadurai's claims are annoying and absolutely false. . . ."

5. "Ayyadurai is a liar.  He is a fraud.  He is a charlatan."

(Compl. ¶ 46, Ex. S at 3.)[2]

---

[2] The original comment itself, as it appeared on Techdirt's website, can be seen at https://www.techdirt.com/articles/20161103/11502935958/heres-truth-shiva-ayyadurai-didnt-invent-email.shtml?threaded=false#c376 (Comment No. 28).

## ARGUMENT

**I.   PLAINTIFF'S SOLE CLAIM SPECIFICALLY AGAINST BEADON IS PREEMPTED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT.**

Section 230 of the Communications Decency Act ("Section 230") provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Plaintiff's only specific mention of Beadon in the Complaint (other than his identifying Beadon as a defendant) seeks to hold him liable for the November 6 Post. (Compl. ¶ 46 & Ex. S.) However, examination of Exhibit S reveals that the only allegedly defamatory content in that post is indisputably "information provided" not by Beadon but "by another information content provider": the anonymous user who posted the words about which Plaintiff complains. It is that user, not Beadon, who is "responsible, in whole or in part, for the creation or development" of the allegedly defamatory content. Section 230(f)(3). Accordingly, as the First Circuit Court of Appeals has made clear, Section 230 leaves this Court no choice but to dismiss the claims against Beadon.

A defendant is immunized from suit under Section 230 where "(1) [he] is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [defendant] 'as the publisher or speaker' of that information." Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 418 (1st Cir. 2007) (quoting 47 U.S.C. § 230). The law protects both service providers and "users," such as Beadon, of interactive computer services. 47 U.S.C. § 230. Courts, in the First Circuit and elsewhere, have consistently held that lawsuits seeking to impose liability for the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw,

postpone or alter content—are barred" by the statute. <u>Zeran v. Am. Online, Inc.</u>, 129 F.3d 327,

330 (4th Cir. 1997). Section 230 expressly preempts state as well as federal causes of action:

"[N]o liability may be imposed under any State or local law that is inconsistent with this

section." Section 230(e)(3).

"Congress enacted [Section 230] partially in response to court cases that held internet

publishers liable for defamatory statements posted by third parties on message boards maintained

by the publishers." <u>Jane Doe No. 1 v. Backpage.com, LLC</u>, 817 F.3d 12, 18 (1st Cir. 2016), <u>cert.</u>

<u>denied</u>, No. 16-276, 2017 WL 69715 (U.S. Jan. 9, 2017). To effectuate the statute's purpose of

protecting free speech online, "[t]here has been near-universal agreement that section 230 should

not be construed grudgingly," since "websites that display third-party content may have an

infinite number of users generating an enormous amount of potentially harmful content, and

holding website operators liable for that content 'would have an obvious chilling effect' in light

of the difficulty of screening posts for potential issues." <u>Jane Doe No. 1</u>, 817 F.3d at 18 (quoting

<u>Zeran</u>, 129 F.3d at 331).

Here, all of Plaintiff's claims against Beadon—for libel, intentional interference with

prospective economic advantage, and intentional infliction of emotional distress—are preempted

by Section 230 because they all seek to treat him as the publisher of the anonymous third-party

reader's comment. (Compl. ¶ 46, Ex. S.) "[W]hat matters is not the name of the cause of

action—defamation versus negligence versus intentional infliction of emotional distress—what

matters is whether the cause of action inherently requires the court to treat the defendant as the

'publisher or speaker' of content provided by another." <u>Barnes v. Yahoo!, Inc.</u>, 570 F.3d 1096,

1101–02 (9th Cir. 2009), as amended (Sept. 28, 2009); <u>see also</u> <u>Jane Doe No. 1</u>, 817 F.3d at 19

("The ultimate question . . . does not depend on the form of the asserted cause of action" but on

whether it "necessarily requires that the defendant be treated as the publisher or speaker of content provided by another."). "In short, immunity under the CDA depends on the pedigree of the content at issue." Jones v. Dirty World Entm't Recordings LLC, 755 F.3d 398, 409 (6th Cir. 2014). Here, the content at issue originated with a third-party user, not with Beadon.

It is utterly irrelevant to the Section 230 analysis that Beadon may have selected the content at issue from the week's collection of reader comments, and that he may have copied and pasted that user-generated content into the "Funniest/Most Insightful Comments of the Week" article that he created. Such acts, the courts have held, do not transform Beadon into the "creat[or]" or "develop[er]" of the allegedly defamatory content. 47 U.S.C. § 230(f)(3). To the contrary, selection and editing amount to the simple "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content," which is at the heart of what Section 230 protects. Jane Doe No. 1, 817 F.3d at 18. To impose liability for such acts would be to turn Section 230 into a nullity, treating Beadon as the "publisher" of information provided by the third-party poster. Nor does Beadon become the "'creator' or 'developer'" of the reader's comment simply because he "add[ed] commentary to third-party content." That is because, even if it could be said that his commentary "'ratifie[d] or adopt[ed]' that content," still the commentary he added does not "materially contribute" to the reader comment's alleged unlawfulness. Jones, 755 F.3d at 416; Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC, 521 F.3d 1157, 1167-68 (9th Cir. 2008) (interpreting "the term 'development' as referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness").

Thus, in Jones, a third party submitted a comment to a website, TheDirty.com, alleging that a teacher was sexually promiscuous. The moderator of the website selected the comment for

publication and added his own statement to it: "Why are all high school teachers freaks in the

sack?" The moderator's remark, the Sixth Circuit Court of Appeals noted, was made after the

allegedly defamatory posting had already been displayed. "It would break the concepts of

responsibility and material contribution to hold [the provider] responsible for the defamatory

content of speech because he later commented on that speech." Id. at 416. In short, the court

held, "[a] website operator cannot be responsible for what makes another party's statement

actionable by commenting on that statement post hoc." See also Parisi v. Sinclair, 774 F. Supp.

2d 310, 316 (D.D.C. 2011) (dismissing claims as barred by the CDA despite argument that

defendant "adopted" the statements at issue as its own, because "it would be contrary to the

purpose of the CDA, which sought to encourage the vibrant and competitive free market of ideas

on the Internet, by establishing immunity for internet publication of third-party content to require

a fact-based analysis of if and when a defendant 'adopted' particular statements and revoke

immunity on that basis" (internal citations and quotation marks omitted)).

    Nor is Plaintiff's bare allegation that Beadon "authored" the content in the November 6

Post sufficient to circumvent Section 230. (Compl. ¶ 46); Nemet Chevrolet, Ltd. v.

Consumeraffairs.com, Inc., 591 F.3d 250, 259 (4th Cir. 2009) (rejecting allegations that website

created content as "pure speculation and a conclusory allegation"). Section 230 provides "broad

immunity" from suit, not a mere defense to liability. Lycos, 478 F.3d at 415 (1st Cir. 2007)

("Congress has granted broad immunity to entities . . . that facilitate the speech of others on the

Internet."). Thus, as the courts have recognized, Section 230 immunity would be "eviscerated" if

any plaintiff could evade it "simply by reciting a common line that user-generated statements are

not what they say they are," and that they were in fact written by the website itself. Kimzey v.

Yelp! Inc., 836 F.3d 1263, 1268-69 (9th Cir. 2016) (upholding dismissal of claim alleging that

Yelp! fabricated a review on its website). "The immunity in the CDA is broad enough to require

plaintiffs alleging such a theory to state the facts plausibly suggesting the defendant fabricated

content under a third party's identity." <u>Id</u>. No such facts have been alleged here. <u>See also</u> <u>Levitt</u>

<u>v. Yelp! Inc.</u>, 2011 WL 5079526, *1, *5 (N.D. Cal. Oct. 26, 2011) (rejecting allegation that

Yelp! posted false reviews to extort businesses into paying for advertising as "entirely

speculative"), <u>aff'd</u>, 765 F.3d 1123 (9th Cir. 2014).

## II.     <u>BEADON CANNOT BE HELD LIABLE FOR ANY OF THE OTHER ALLEGEDLY DEFAMATORY CONTENT, WITH WHICH HE IS NOT ALLEGED TO HAVE HAD ANY INVOLVEMENT.</u>

Beadon cannot be held liable for any statement in any of the other 13 articles spotlighted

in the Complaint, all of which were bylined by Masnick. That is because there is no specific

allegation that Beadon, a staff writer, was involved in their drafting, editing, or publication.

"'[T]o be liable for defamation, defendant . . . must have *published* or knowingly participated in

publishing the defamation.'" <u>Catalfo v. Jensen</u>, 628 F. Supp. 1453, 1455 (D.N.H. 1986) (ellipses

and emphasis in original) (quoting <u>Tavoulareas v. Piro</u>, 759 F.2d 90 (D.C. Cir. 1985)). A non-

supervisory individual cannot be held liable for defamation unless he had "actually written or

edited the article" in question or "exercised . . . control or influence over its publication." <u>Id.</u>

(dismissing defamation claim against photographer who did not write, edit, assist, or supervise in

the writing of the article in question). Here, Plaintiff alleges that it was Masnick, not Beadon,

who wrote every allegedly defamatory statement other than the November 6 Post, and each of

those articles bears the byline of Masnick alone. Plaintiff does not allege that Beadon (who is

scarcely mentioned in the complaint at all) had any involvement in any of those articles.

Nor can Plaintiff salvage his claims against Beadon by way of his conclusory (and

logically impossible) assertion that all of the Defendants "were and are the agents, licensees,

employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the

remaining Defendants," or by his similarly bare assertion, unpinioned by facts, that each of their actions were "known to, authorized by, and/or ratified by" each other. (Compl. ¶ 9.) The mere allegation that a statement was published with a defendant's knowledge or assent is insufficient to state a defamation claim against that defendant. Catalfo, 628 F. Supp. at 1456 (rejecting ratification theory of liability where defendant had no authority over the publication); Long v. Marubeni Am. Corp., 406 F. Supp. 2d 285, 299 (S.D.N.Y. 2005) (holding, pursuant to Rule 12(b)(6), that allegation that publication occurred with defendants' "knowledge, permission and/or authorization" would be insufficient to state a claim). Furthermore, to allege a conspiracy, "a plaintiff must set forth more than just conclusory allegations of a [conspiratorial] agreement." Olmo v. Narker, No. 14-13434-WGY, 2015 WL 4535669, at *3 (D. Mass. July 27, 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Instead, there must be allegations concerning "meetings, conversations, or phone calls or any other conduct that would raise the inference" that Defendants had reached a "meeting of the minds." Miller v. Donnini, No. 14-12337-NMG, 2015 WL 1431103, at *21 (D. Mass. Mar. 27, 2015), report and recommendation rejected in part and adopted in part on separate grounds, No. 14-12337-NMG, 2015 WL 1431075 (D. Mass. Mar. 27, 2015) (dismissing conspiracy allegation). Plaintiff has alleged no such details, and therefore has failed to state any claim against Beadon with respect to the 13 posts that he alleges were written by (and bear only the byline of) Masnick.

III. **EVEN IF BEADON COULD BE HELD LIABLE FOR CONTENT POSTED BY THE THIRD-PARTY COMMENTER, PLAINTIFF'S CLAIM WOULD STILL FAIL.**

Plaintiff's claims against Beadon fail for the additional reasons that doom his claims against Masnick and Floor64: that the statements at issue are protected opinion, and that Plaintiff has failed to plead the required element of "actual malice" with the necessary particularity.

Those arguments, set out in detail in the Floor64 Rule 12(b)(6) Memorandum at pages 9-29, are recapped briefly below.

### A.      All of the Statements Are Opinions.

First, all of the allegedly defamatory statements that form the basis of Plaintiff's claim are constitutionally protected opinions. (See Floor64 Rule 12(b)(6) Memorandum at 9-23.) For example, Plaintiff seeks to impose liability on Beadon for a third-party reader's comment that Plaintiff was "lying" and was not only a "liar," but also a "fraudster," "fraud," and "charlatan" because he claimed to have invented email. Courts have routinely determined that such epithets, in context, are vituperative expression protected by the First Amendment. See, e.g., Phantom Touring v. Affiliated Publiscations, 953 F.2d 724, 728 (1st Cir. 1992) (statement that musical was a "fake" and "a rip-off, a fraud, a scandal, a snake-oil job" was protected opinion; affirming dismissal on motion for judgment on pleadings); Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 160-61 (D. Mass. 2012), aff'd, 714 F.3d 29 (1st Cir. 2013) (statement that plaintiff was a "liar" was protected opinion; recommending that motion to dismiss be granted); Spelson v. CBS, Inc., 581 F. Supp. 1195, 1203-05 (N.D. Ill. 1984), aff'd, 757 F.2d 1291 (7th Cir. 1985) (statements describing medical practitioners as "cancer con-artists," "cancer quacks," and "unscrupulous charlatans" who commit "fraud" and provide "phony" medicine are protected opinion).[3] Likewise, the commenter's assertion that Plaintiff's "claims are annoying and absolutely false," "totally false," and "bogus" are simply a reference to the commenter's opinion that despite Plaintiff's claims, he did not "invent" email. As explained in detail in the Floor64 Rule 12(b)(6) Memorandum, the debate over who "invented" email—like the claim that the Plaintiff is "annoying"—is an inherently subjective question, no more capable of objective determination than a debate over the date that the civil rights movement began, or a quarrel over

---

[3] See also Floor64 Rule 12(b)(6) Memorandum at 11-13 (collecting additional cases).

the essential attributes of the perfect cheesecake. See Gray, 221 F.3d at 249 ("vague and

subjective" characterizations not actionable); Floor 64 Rule 12(b)(6) Memorandum at 14-17.

Such statements simply cannot serve as the basis for a defamation claim.

With respect to the November 6 Post in particular, it should be noted that the anonymous

commenter supported his or her conclusions by citing numerous facts, including Plaintiff's

conspicuous absence from primary historical documents, which Plaintiff does not dispute.

Plaintiff also does not dispute the facts underlying the opinions contained in the 13 other posts

that he claims to be defamatory. See Phantom Touring, 953 F.2d at 730 (defendant's "full

disclosure of the facts underlying his judgment" render statement protected opinion). In a

nutshell, Plaintiff is not complaining about false statements of fact; he is complaining about

objectionable conclusions that his critics have drawn from those undisputed facts. Under the First

Amendment, however, it is axiomatic that "there is no such thing as a false idea." Gertz v.

Robert Welch, Inc., 418 U.S. 323, 339-340 (1974). "However pernicious an opinion may seem,

we depend for its correction not on the conscience of judges and juries but on the competition of

other ideas." Id.

Indeed, Plaintiff's allegations with respect to the November 6 Post provide a window into

the problems with his claims as whole. When confronted by critics who provide detailed support

for their assertions, Plaintiff responds not by challenging that support, but instead by selectively

picking disparaging words from each post, removing them from their factual context, and then

branding them as false. But just as "[t]he law provides no redress for harsh name-calling,"

Flowers v. Carville, 310 F.3d 1118, 1127 (9th Cir. 2002), so the courts are not a forum for

Plaintiff to vindicate his displeasure at being called a "fraud."

Finally, Plaintiff complains about the reader's comment invoking Plaintiff's "bogus claims of racism"—a reference to Plaintiff's comment about the "lynching" of facts by "[w]hite journalists" opposed to him, a man of Indian heritage. However, as explained in the Floor64 Rule 12(b)(6) Memorandum (at pages 19-20), there is no dispute that Plaintiff has accused his critics of being racist. Whether those charges are "bogus" is a subjective matter that depends upon (1) the privately held views of unnamed third parties, and (2) the validity of Plaintiff's breathtaking claim to have "invented" the technology of email—neither of which can be proven as a factual matter.

### B.      Plaintiff has Failed to Plead Actual Malice.

The libel claim against Beadon fails for yet another reason. Plaintiff, a self-described public figure, has failed adequately to allege that Beadon acted with "actual malice." As explained in the Floor64 Rule 12(b)(6) Memorandum, Plaintiff failed to allege that <u>any</u> defendant, including Beadon, published with knowledge of falsity or reckless disregard for the truth. Floor64 Rule 12(b)(6) Memorandum at 23- 27; <u>see also</u> <u>Biro v. Condé Nast</u>, 963 F. Supp. 2d 255, 276 (S.D.N.Y. 2013), <u>aff'd</u>, 807 F.3d 541 (2d Cir. 2015) (actual malice must be pleaded as to "each defendant"). Therefore, his claims must be dismissed on that basis as well.

### C.      Counts II and III Are Also Meritless.

Lastly, Plaintiff's tag-along claims of intentional interference with prospective economic advantage and intentional infliction of emotional distress fail because they amount to an improper attempt to repackage a constitutionally barred libel claim. Moreover, Plaintiff has failed to identity even a single business relationship of which any defendant knew or with which any defendant interfered, nor has he identified any conduct "intolerable in a civilized society" as

12

required to state a claim for intentional infliction of emotional distress. (See Floor64 Rule

12(b)(6) Memorandum at 27-29.)

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Leigh Beadon should be dismissed in

their entirety, with prejudice.

LEIGH BEADON

By his attorneys,


*/s/ Robert A. Bertsche*
Robert A. Bertsche (BBO #554333)
*rbertsche@princelobel.com*
Jeffrey J. Pyle (BBO #647438)
*jpyle@princelobel.com*
Thomas Sutcliffe (BBO #675379)
*tsutcliffe@princelobel.com*
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, Massachusetts 02110
Dated:  March 14, 2017          Tel:  (617) 456-8018


## CERTIFICATE OF SERVICE

I hereby certify that the within document filed through the CM/ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing and by
first-class mail to any non-registered participants.

*/s/ Robert A. Bertsche*
Robert A. Bertsche


2652805v1

13